UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON STONE,

        Plaintiff,

  v.                                    CAUSE NO. 3:21-CV-266-DRL-MGG

KELSEY TORREZ *et al.*,

        Defendants.

OPINION AND ORDER

Brandon Stone, a prisoner without a lawyer, filed an amended complaint. ECF 19. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Stone alleges that from August 2, 2019 and November 1, 2021, when he was housed at the Westville Correctional Facility, he filed four complaints against prison officials pertaining to his conditions of confinement. ECF 19 at 1-2. After the officials were made aware of his lawsuits, he says he was subjected to retaliation. *Id*. at 2. One of the ways that he was allegedly retaliated against was by delaying the sending and receiving of his legal mail. *Id*. From October 24, 2020 to February 21, 2021, he asserts that mailroom employees M. Moore, U.C., M.P., K.S., H.W., and C.C. either delayed sending out 71

pieces of his legal mail or they did not send out his legal mail at all. *Id*. Mr. Stone further asserts that from February 21, 2021 to November 1, 2021, there were 20 more instances where his mail was either delayed or not sent out at all. *Id*. at 2-3. Mr. Stone speculates that Captain Louis[1] may have ordered his mail be delayed or not sent but he "can't prove it." *Id*. at 2.

"To prevail on his First Amendment retaliation claim, [Mr. Stone] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Mr. Stone has not alleged facts from which it can be plausibly inferred that the actions of the mailroom staff in delaying or not sending out his mail were motivated by his filing of lawsuits against other individuals. Thus, Mr. Stone may not proceed on this claim.

Mr. Stone next alleges that the mailroom employees' delays in sending out his legal mail or not sending it out at all caused two of his appeals to be dismissed. ECF 19 at 3. Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims

---

[1] He has not named Captain Louis as a defendant in this case.

that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)).

To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998), and that actual injury (or harm) resulted, *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that Bounds did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). "[W]hen a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filings, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources." *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003) (overruled on other grounds). Accordingly, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Mr. Stone asserts that mailroom employees prevented him from pursuing his legal claims in *Stone v. Harvill*, Cause No. 3:20-CV-498-JD-MGG (N.D. Ind. filed June 17, 2020)

and *Stone v. Hicks*, Cause No. 3:20-CV-937-JD-MGG (N.D. Ind. filed Nov. 2, 2020) because they delayed or did not send his appeal paperwork or applications to proceed without prepaying fees or costs to the United States Court of Appeals for the Seventh Circuit. ECF 19 at 3. Mr. Stone claims he had to ask for extensions to resubmit his applications to proceed without prepaying fees or costs and his cases were ultimately dismissed. *Id.*

With respect to *Stone v. Harvill*, Cause No. 3:20-CV-498, a review of the docket shows that Mr. Stone's appeal was never docketed. However, if he had attempted to file an appeal, as he alleges, that appeal would not have been taken in good faith. ECF 33. As explained in the district court's order of dismissal, Mr. Stone's amended complaint did not state a claim upon which relief could be granted. *Id.* In his amended complaint, Mr. Stone alleged that he was discriminated against because his grievances were not being processed and this prevented him from appealing his complaints to a higher prison authority. *Id.* at 2. However, he did not identify himself as being part of any group, protected or otherwise, that was treated differently than other inmates. *Id.* at 3. The court determined that Mr. Stone could not proceed on this claim because his vague allegations that he was treated differently than other inmates did not constitute an equal protection claim. *Id.* Furthermore, the court explained that Mr. Stone had no constitutional right to access the prison's grievance process. *Id.* Here, the court cannot identify any non-frivolous civil claim that has been adversely impacted as a result of mailroom staff allegedly either delaying or not sending Mr. Stone's appeal paperwork or application to proceed without prepaying fees or costs to the Seventh Circuit. Because his right to access

4

the courts extends only to meritorious claims, he has not stated a claim for denial of access to the courts with respect to the appeal he alleges he filed in Cause No. 3:20-CV-498.

As to *Stone v. Hicks,* Cause No. 3:20-CV-937, a review of the docket shows that Mr. Stone filed an appeal—Case No. 21-1703. ECF 10. However, when Mr. Stone filed his appeal, the district court determined his appeal had not been taken in good faith. ECF 15. His complaint alleged that the defendants violated his First Amendment right to access the courts because they conspired to impede and restrict his access to video evidence pertaining to two disciplinary hearings. *Id.* at 1. The district court determined Mr. Stone's complaint did not state a claim because he had been given an opportunity to view the video evidence on three occasions and the evidence had been preserved for litigation. *Id.* The district court also found that Mr. Stone could not proceed on his conspiracy claim because he had not alleged the crucial elements of a conspiracy action and he had an opportunity to view the video evidence. *Id.* Though Mr. Stone alleges his appeal was dismissed due to the delay in sending mail, he has not demonstrated that the appeal was meritorious. Therefore, he has not stated a First Amendment claim for denial of his right to access the courts with respect to his appeal in Cause No. 3:20-CV-937.

Though Mr. Stone alleges that his appeal in Case 21-1703 was dismissed because mailroom staff purposedly delayed sending his application to proceed without prepaying fees or costs to the Seventh Circuit, his contention lacks merit. ECF 19 at 3. A review of the docket in Case 21-1703 shows that Mr. Stone did not comply with the Seventh Circuit's orders pertaining to his request for leave to proceed *in forma pauperis*. On July 7, 2021, the court of appeals noted that Mr. Stone's *in forma pauperis* paperwork

was incomplete because it did not include an asset affidavit and PLRA memorandum. *See* Case 21-1703, ECF 7. He was ordered to file these documents or pay the $505.00 appellate fee by July 29, 2021. *Id*. On July 26, 2021, Mr. Stone filed a motion to proceed *in forma pauperis* but he did not file a PLRA memorandum. *Id*. at 10. The court ultimately afforded Mr. Stone until September 24, 2021 to file a PLRA memorandum. *Id*. at 11, 13. Because he did not pay the $505.00 appellate fee or file a PLRA memorandum, the court of appeals dismissed his appeal on October 13, 2021. *Id*. at 14. After the appeal was dismissed, Mr. Stone filed an application to proceed without prepaying fees or costs on appeal with the Seventh Circuit; however, he did not file his PLRA memorandum. The court of appeals returned the application to him, and this court's review of the returned paperwork indicates a PLRA memorandum was not included with the submission. *See* 3:21-cv-266, ECF 19-1 at 1-8. Here, Mr. Stone has not stated a First Amendment claim because he caused his own appeal to be dismissed by not complying with the Seventh Circuit's orders to file a PLRA memorandum.

Mr. Stone next asserts that Kelsey Torres, a law library employee, discriminated against him and treated him differently than other inmates because she would not give him the same quantity of legal supplies she gave other inmates, and she would not give him legal loaner materials he needed to prepare his legal documents. ECF 19 at 3. To state an equal protection claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor[.]" *Lisle v. Welborn*, 933 F.3d 705, 719–20 (7th Cir. 2019) (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–

72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Thus, he must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* Mr. Stone has not identified himself as being part of any group, protected or otherwise, that is treated differently than other inmates. Instead, he makes vague allegations he is being treated differently than other inmates, and that does not constitute an equal protection claim. To the extent Mr. Stone claims Ms. Kelsey's actions violate Indiana Department of Correction (IDOC) policy that mandates he have reasonable access to legal materials, the failure to follow prison policy does not amount to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations."). Therefore, Mr. Stone has not stated a claim.

As a final matter, Mr. Stone asserts Ms. Torres retaliated against him for asserting his First Amendment rights. ECF 19 at 4. He claims he heard from prison staff and a former mailroom employee that Ms. Torres reviews outgoing mail before it is processed by mailroom employees. *Id*. Mr. Stone states he has documents in his possession that prove she has not only been opening and reading his sealed outgoing mail addressed to the court, but she also sends the mail back to him with her own comments to dissuade him from filing his documents. *Id*. He further claims that Ms. Torres violated IDOC policy with respect to his incoming legal mail because she does not open this mail in front of him. *Id*. However, Mr. Stone has not alleged facts that, if true, would "deter a person of

7

ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). Nor has he alleged facts that plausibly show Ms. Torres's actions were predicated on a retaliatory motive. And, as discussed *supra*, the failure to follow prison policy does not amount to a constitutional violation. *Scott*, 346 F.3d at 760. Mr. Stone has not stated a claim here.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

May 16, 2022                                           *s/ Damon R. Leichty*
                                                                  Judge, United States District Court